**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| COLT HOLBERT individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This class action complaint is brought on behalf of Colt Holbert ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), against Defendant Ford Motor Company ("Defendant" or "Ford"). The allegations set forth below are based on personal knowledge as to Plaintiff's own acts and on investigation conducted by counsel as to all other allegations.

## INTRODUCTION

1. Defendant designs, manufactures, advertises, markets, and sells vehicles, including the 2021-2026 Ford Bronco ("Class Vehicles"). On information and belief, the Class Vehicles had a base MSRP of $28,500 for the 2021 base model, $32,895 for the 2022 base model, $32,295 for the 2023 base model, $39,630 for the 2024 base model, $40,990 for the 2025 base model, and $42,490 for the 2026 base model. Special editions and trim variants of the Class Vehicles, however, significantly increased the cost, up to a high of $90,035 for the top-of-the-line Raptor model, for the 2026 model year. Regardless of the configuration or trim option chosen, all models come standard with a removable rooftop. The removable rooftop is a key feature of the Bronco.

2. The Class Vehicles are Sport Utility Vehicles, or SUVs, available in two- and four-door configurations. Ford differentiated its Class Vehicles in the SUV market by touting their rugged, off-road capabilities. Product images of the Class Vehicles, for example, show them atop rocky terrain and driving through water, suggesting the Class Vehicles are built to withstand not only the elements, but the harsh conditions and environments that off-road vehicles are expected to encounter.



*Figure 1: 2024 Ford Bronco*[1]



1 https://web.archive.org/web/20250429123807/https://www.ford.com/suvs/bronco/2024/?intcmp=vhp-seconNav-previous (accessed April 24, 2026).

*Figure 2: 2024 Ford Bronco crossing water*[2]

3. However, Defendant designed, manufactured, marketed, and distributed the Class Vehicles without disclosing a key defect in material, workmanship, and/or design. Specifically, the Class Vehicles' Molded-in-Color, or MIC, hard top is subject to delamination, cracking, and discoloration (the "Defect") that Ford is unable to remedy.

4. In addition to concealing the Defect, Defendant materially omitted, and thereby misrepresented, the attributes and capabilities of the Class Vehicles by claiming, among other things, that the vehicles had been thoroughly tested, had no manufacturing shortcomings, and were equipped with robust rooftops that were designed to be removed and built to withstand not only removal and re-installation, but also the elements, as expected of an off-road-ready vehicle. Plaintiff and Class members have been left with a vehicle whose rooftop deteriorates in quality, regardless of off-road use, and whose faults imperil the interior of the Class Vehicles, exposing them to damage from water intrusion and the elements.

5. Defendant knew or should have known before the time it sold the first Class Vehicle, that the Class Vehicles contained the Defect.

6. Despite knowledge of the Defect from customer complaints, information sent from dealers, and its own internal records, Defendant has not offered its customers warranty extensions to cover rooftop replacements past the 36,000 bumper-to-bumper warranty, which is necessary because not only have Plaintiff and Class members required multiple rooftop replacements within this warranty period, but the Defect has manifested after this warranty's end. The re-manifestation of the Defect after the warranty's end is foreseeable and predictable because Ford replaces the defective rooftop with another defective rooftop. Unfortunately for

[2] *Id.*

Plaintiff and Class members, Ford does not offer replacement rooftops after the warranty's end without significant cost to the owner.

7. Plaintiff has suffered harm as a result of Defendant's decision not to disclose the Defect in the Class Vehicles. Plaintiff purchased a Class Vehicle which suffers from the Defect.

8. On behalf of the class and subclasses he seeks to represent, Plaintiff seeks an award of monetary damages, including the costs of inspecting and repairing the Class Vehicles, and appropriate injunctive and equitable relief, including an order requiring Defendant to adequately disclose and repair the Defect in its Class Vehicles.

9. It is well-settled that a "plaintiff is 'the master of the complaint,' and therefore controls much about [his or] her suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 220 L.Ed.2d 289, 302 (U.S. 2025). As detailed herein, Plaintiff's claims focus on material omissions, not affirmative misrepresentations.

## PARTIES

10. Plaintiff Colt Holbert is a citizen and resident of Davis, West Virginia.

11. Defendant Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendant, and (4) there are more than 100 Class members.

13. This Court has personal jurisdiction over Defendant because Defendant is incorporated in Delaware.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### I. The Defect

15. The Molded-in-Color, or MIC, hardtops are supplied by German producer Webasto.[3] Ford invested "roughly $213 million into the Bronco's removable roof system[]"[4] that "use[s] composite panels with paper cores for a removable roof system[.]"[5] The rooftop's materials composition is known as Paper Honeycomb (PHC), and it forms the core of the roof panel that is then coated with a mixture of polyurethane and reinforced glass fibers.[6]

[3] https://carbuzz.com/news/ford-bronco-hardtops-are-a-billion-dollar-business/ (last accessed May 1, 2026).
[4] *Id.*
[5] https://fordauthority.com/2024/09/ford-bronco-hardtop-roof-tech-finalist-for-2025-pace-awards/ (last accessed April 30, 2026).
[6] *Id.*




*Figure 3: Cross section of the MIC rooftop.*

16. As stated *supra*, the MIC hardtop is subject to delamination, cracking, and discoloration. The Defect occurs due to separation of the MIC rooftop's outer layer. Owners describe light cracks or bubbling, and note that these issues are exacerbated by hot and cold weather, material stress, and poor sealing. Automotive news outlet Jalopnik reported since at least July 20, 2021, the rooftop issues Bronco owners were reporting online, including what were at the time described as "snakeskin-like" patterns.[7] Importantly, Ford provided comment to Jalopnik's story, reflecting its knowledge of this problem since at least July 20, 2021.

[7] https://www.jalopnik.com/some-ford-bronco-owners-are-reporting-their-hardtops-ar-1847321754/ (last accessed May 4, 2026)

17. On August 13, 2021, Ford again commented on the lacking quality standards of the MIC rooftops, in a statement made to automotive outlet, Cars.com:

> As part of our extensive pre-delivery quality inspections, we discovered molded-in color roofs made by our supplier partner Webasto did not meet our quality standards. The issue does not impact the functionality of the roof but can cause unsatisfactory appearance when exposed to extreme water and humidity. As a result, we've made the decision to replace all molded-in color hard-top roof panels on all Bronco vehicles produced to date. This includes Broncos which have been delivered, are in transit, and units which have been built and are awaiting final quality release at the plant.[8]

18. Contrary to Ford's statement that the Defect does not impact the functionality of the roofs, owners report that rainwater infiltrates the layers of the hardtop and causes the cardboard honeycomb inside the hard top panels to fail.[9] The water leaks compromise the integrity of the composite panels, causing further cracking and delamination to take place.[10] In more severe cases, water leaks into the cabin itself.

19. In an August 16, 2021, story featured in Jalopnik, Ford representative Jeff Marentic, who is the General Manager for Passenger Vehicles, admitted the company faced production issues with its rooftop supplier, Webasto, stating, "We're still not where we need to be on volume and quality on the two and four-door hardtops."[11] Regarding the timeline, Marentic stated: "Embarrassed to say, but we did catch this early, and we're doing the right thing. During pre-delivery inspections, we found out these molded-in-color hardtop roofs didn't meet our standards[.]"[12] According to Ford, the quality issues manifesting with the rooftops were

---

[8] https://www.cars.com/articles/ford-bronco-beset-by-roof-issues-439757/ (last accessed May 4, 2026)
[9] https://www.bronco6g.com/forum/threads/bye-bye-2025-bronco-im-tired-of-the-hard-top-cracks.124888/page-9
[10] *Id.*
[11] https://www.jalopnik.com/ford-is-embarrassed-by-the-ford-bronco-hard-top-problem-1847485040/ (last accessed May 4, 2026)
[12] *Id.*

due to the way moisture interacted with the roof's edges, saying: "When they're exposed to heavy rain and humidity, this is where we're starting to see the appearance that is not satisfactory."[13]

20. Moreover, Ford asserted that fixing the problem did not require material change, but rather a manufacturing process alteration, saying, "The process has now been adjusted to ensure that we get that robust seal that we need[.]"[14]

21. In an effort to address dealer and customer confusion over what types of hardtop damage Ford's warranty would cover, Ford supplied the following images as examples of damage that were covered by Ford's warranty:

[13] *Id.*
[14] *Id.*



*Figure 4: Honeycomb pattern manifesting through the outer layer that Ford affirms is warrantable.*



*Figure 5: Another example of the honeycomb structure coming through to the top layer that Ford affirms is warrantable.*[15]

[15] The images seen in Figures 4 through 10 were supplied by Ford to its dealerships and service technicians and serve as examples of hard top damage that Ford's warranty would cover.

Exhibit A.




*Figure 6: MIC hard top, rear cap, and center panels, cracks/fractures on the surface with no signs of impact/abuse that Ford affirms is warrantable.*

---

https://www.bronco6g.com/forum/attachments/bronco-roof-concern-analysis-pdf.769678/?force-system-browser=1 (last accessed April 30, 2026). A copy of this document is attached hereto as Exhibit A.



*Figure 7: Additional example supplied by Ford of cracks that Ford affirms is warrantable.*




*Figure 8: Delamination of hard top outer layer that Ford affirms is warrantable.*




*Figure 9: Raised patches on the hard top with no distorted grain pattern or discoloration that Ford affirms is warrantable.*




*Figure 10: Delamination of hard top edge that Ford affirms is warrantable.*




*Figure 11: Core material visible at the edges of the hard top panels.*

22. Numerous National Highway Traffic Safety Administration (NHTSA) complaints, as detailed below, demonstrate that Ford's MIC hardtop rooftops rapidly degrade in quality from normal and expected use. Despite affected drivers' reporting of this issue to Ford, going through multiple replacements while under warranty, and needing additional replacements following the warranty's end, Ford has not issued a fix for the Defect or extended its warranty to cover future replacements.

23. Ford was or should have been aware, through consumer complaints, NHTSA reports, and dealer records, that the MIC rooftops degrade in quality well within the Class Vehicle's expected life, and its 36,000-mile warranty. Ford's failure to re-engineer, recall, or provide effective repairs demonstrates knowing concealment of the Defect.

24. Below are examples of consumer complaints submitted to NHTSA regarding rooftop quality issues with the Class Vehicles, copies of which are attached hereto as Exhibit B:

a. NHTSA ID No. 11555364 (filed November 15, 2023; San Antonio, Texas; 2023 Bronco): The owner reported stress cracks forming on the exterior of the hardtop directly parallel to the

interior mounting bolts, which began to appear before 1,000 miles. The owner stated that a local Ford dealer documented the problem but deemed it not a warrantable condition.

b. NHTSA ID No. 11568967 (filed January 31, 2024; Imperial, Missouri; 2022 Bronco): The owner reported that the rear section of the hardtop was delaminating because unfinished edges allowed moisture to enter, and that Ford offered to cover all but $1,200 of the repair because the vehicle had over 40,000 miles.

c. NHTSA ID No. 11573450 (filed February 22, 2024; Imperial, Missouri; 2022 Bronco): The owner reported that the hardtop was delaminating around the rear fixed windows at approximately 40,000 miles, that Ford offered to pay only a portion of the repair, and that the problem is not an isolated issue.

d. NHTSA ID No. 11627214 (filed November 25, 2024; Clermont, Florida; 2021 Bronco): The owner reported that, while driving on the highway at approximately 55 to 60 mph, a large section of the hardtop blew off the vehicle. The owner stated that Ford is aware of the issue but has refused to address it.

e. NHTSA ID No. 11634444 (filed January 6, 2025; Fairfield, New Jersey; 2021 Bronco): The owner reported that the hardtop is cracked and delaminating, that the dealership received a rejection letter from Ford on the warranty claim, and that the dealership had recently seen another vehicle with the same issue.

f. NHTSA ID No. 11640479 (filed February 3, 2025; Hoover, Alabama; 2023 Bronco): The owner reported cracks around the corner of the rear passenger-side window while the vehicle was still under warranty, and noted that Ford had issued General Service Bulletin 23-7004

regarding this type of issue. The owner also stated that some owners have had three to four hardtop replacements within the warranty period.

g. NHTSA ID No. 11648860 (filed March 17, 2025; Trenton, Illinois; 2021 Bronco): The owner reported discovering that the removable hardtop was cracked while the vehicle was parked, and that a dealer determined the hardtop needed to be replaced. The vehicle was not repaired. The failure mileage was approximately 25,000.

h. NHTSA ID No. 11659022 (filed May 5, 2025; location not reported; 2022 Bronco): The owner reported random cracks in the hardtop with no damage to the vehicle.

i. NHTSA ID No. 11671355 (filed July 5, 2025; location not reported; 2024 Bronco): The owner reported cracks in the removable top that allow moisture into the affected panels, creating an environment for mold growth.

j. NHTSA ID No. 11671358 (filed July 5, 2025; location not reported; 2024 Bronco): The owner reported cracks in the removable top that allow moisture into the affected panels, creating an environment for possible mold growth.

k. NHTSA ID No. 11675940 (filed July 24, 2025; location not reported; 2022 Bronco): The owner reported that the hardtop has started to crack, mostly on the rear section, which had never been removed, and that Ford would not treat it as a defect even after receiving photographs.

l. NHTSA ID No. 11676532 (filed July 27, 2025; location not reported; 2021 Bronco): The owner reported multiple stress cracks above the passenger-side window at just over 10,400 miles, shortly after the warranty expired. The owner stated that a Ford dealership in Winchester, Virginia acknowledged that this is a known issue and that it had replaced multiple hardtops for

the same defect, but declined to inspect the vehicle because the warranty had expired, and that Ford denied coverage without inspecting the vehicle.

m. NHTSA ID No. 11677056 (filed July 29, 2025; Montgomery, Texas; 2022 Bronco): The owner reported serious cracking and surface separation of the rear hardtop panel, with fractures near the seams exposing the underlying material and water collecting in the openings. The owner reported that the damage began before the bumper-to-bumper warranty expired; that a Ford representative acknowledged the damage but said Ford could not act without a recall or broader investigation; and that the dealer quoted nearly $10,000 to replace the hardtop. The owner also stated that Ford's General Service Bulletin GSB 23-7174 lists rear hardtop panel cracking and edge delamination as warrantable conditions.

n. NHTSA ID No. 11681333 (filed August 18, 2025; Parkville, Maryland; 2023 Bronco): The owner reported that the passenger-side hardtop fractured into several pieces after the driver's side door was opened and closed, and that both the dealer and Ford refused to cover the repair. The failure mileage was approximately 11,000.

o. NHTSA ID No. 11716568 (filed February 8, 2026; Taneytown, Maryland; 2025 Bronco): The owner reported a structural crack in the molded-in-color roof.

p. NHTSA ID No. 11718181 (filed February 16, 2026; Austin, Texas; 2022 Bronco): The owner reported that the hardtop developed cracks early in the life of the vehicle and leaks water, and stated that some owners have had the hardtop replaced more than three times for the same problem.

q. NHTSA ID No. 11721646 (filed March 3, 2026; Chesterfield, Virginia; 2024 Bronco Outer Banks): At approximately 15,000 miles, the owner reported significant cracking across all

four removable roof sections (driver-side front, mid, rear, and passenger-side panels), which first appeared at approximately 13,000 miles and has progressed. The owner stated that the Ford dealership verified the cracking on all four panels, that the cracking was not caused by impact, misuse, improper storage, or improper removal, and that the hardtop was being replaced under the bumper-to-bumper warranty.

r. NHTSA ID No. 11727895 (filed March 30, 2026; Saint Paul, Minnesota; 2023 Bronco): The owner reported several cracks on the hardtop, which the dealer acknowledged and replaced under warranty, but the replacement hardtop had dents and uneven surfaces. The owner stated that he inspected the hardtops on approximately five newer vehicles on the dealer's lot and that each one had issues. The failure mileage was approximately 18,000.

s. NHTSA ID No. 11738844 (filed May 19, 2026; East Prairie, Missouri; 2025 Bronco): The complainant reported that, before the vehicle reached 5,000 miles, the roof had begun to show cracks, honeycombing, and signs of delamination, the same issue described in Ford's Safety Campaign 26S32. The complainant stated that the campaign should be extended to all Broncos from 2021 to the present.

t. NHTSA ID No. 11738852 (filed May 19, 2026; Poolville, Texas; 2024 Bronco): The owner reported that the rear piece of the hardtop cracked on each side and that the front three pieces had honeycombing and ripples. The owner stated that the dealership replaced them under warranty, but the front pieces still have issues, and that the dealership said it would not fix the issue outside the 3-year/36,000-mile warranty.

u. NHTSA ID No. 11739158 (filed May 20, 2026; location not reported; 2024 Bronco): The owner reported that the hardtop began cracking, fading, delaminating, and leaking when the

vehicle was only three months old, and that Ford replaced it under warranty after a year of disputes with the dealer. The owner stated that the honeycomb material is already showing on the replacement hardtop, and that a Ford customer service representative said the replacement would likely fail like the original because it was the exact same top with no improvement.

v. NHTSA ID No. 11739172 (filed May 20, 2026; Commerce City, Colorado; 2023 Bronco): The owner reported delamination and cracking of the roof with leaks.

w. NHTSA ID No. 11739202 (filed May 21, 2026; Reynoldsburg, Ohio; 2022 Bronco): The owner reported cracking around the rear windows, stated that Ford replaces these hardtops under warranty for a known issue, but that his Bronco was just over 6,000 miles beyond the 36,000-mile warranty limit. The dealer quoted more than $10,000 to replace the entire hardtop because all roof panels appeared to be affected.

x. NHTSA ID No. 11739222 (filed May 21, 2026; Ludlow, Massachusetts; 2024 Bronco): The owner reported that the MIC roof cracked at only 6,700 miles.

y. NHTSA ID No. 11746338 (filed June 24, 2026; The Plains, Ohio; 2025 Bronco): The owner reported that the hardtop is warping and delaminating, which also affects the seals of the hardtop panels, and that Ford still refuses to provide a real solution.

z. NHTSA ID No. 11746745 (filed June 26, 2026; Oklahoma City, Oklahoma; 2022 Bronco): The owner reported that his Bronco, built in June 2022, has the same hardtop problems as those covered by Ford's recall, but that his vehicle is not included in the recall. The owner described the problem as a known issue for the life of the Bronco.

aa. NHTSA ID No. 11749734 (filed July 11, 2026; location not reported; 2022 Bronco): The owner reported cracks in the left rear of the roof, stated that Ford's recall covers painted hardtops

but not the owner's matte-finish hardtop, which shows the same problems, and stated that a Ford dealership said it had seen at least a dozen vehicles with the same issue.

bb. NHTSA ID No. 11751149 (filed July 17, 2026; Houston, Texas; 2023 Bronco): The owner reported that the MIC hardtop is cracking, that Ford has replaced it twice for the same issue, and that the problem has returned on the third hardtop.

cc. NHTSA ID No. 11752780 (filed July 25, 2026; Franklin, Tennessee; 2024 Bronco): The owner reported that the MIC hardtop is cracking and showing the honeycomb pattern.

dd. NHTSA ID No. 11754241 (filed August 2, 2026; Disputanta, Virginia; 2022 Bronco): The owner reported that the hardtop is cracking and letting water into the cargo area, that the vehicle falls just outside the parameters of Ford's recall, and that the dealer had not responded more than a month after he contacted it.

ee. NHTSA ID No. 11755438 (filed August 7, 2026; Cocoa, Florida; 2022 Bronco): The owner reported that the hatch was cracked, the forward removable panel had developed bubbles, and the front driver's side panel was chipped and detaching, exposing the underside of the roof. The owner stated that the vehicle was not included in Recall No. 26V299 and that Ford stated the roof panel was not under warranty. The failure mileage was approximately 19,073.

ff. NHTSA ID No. 11762533 (filed September 7, 2026; Albuquerque, New Mexico; 2023 Bronco): The owner reported that the front roof panel is cracking and chipping and that the rear roof panel is cracking around the side windows. The owner stated that the Bronco is never in direct sunlight unless it is being driven and is never driven off-road.

gg. NHTSA ID No. 11763143 (filed September 9, 2026; Anaheim, California; 2023 Bronco): The owner reported cracking of the roof that has caused leaks, stated that Ford recalled only

2021–2022 Broncos, and stated that his 2023 Bronco has the same issue and should also be recalled.

## PLAINTIFF'S FACTUAL ALLEGATIONS

25. Plaintiff ordered a new 2022 Ford Bronco two-door, Black Diamond Sasquatch model, Vehicle Identification Number 1FMDE5CPXNLB81201 (the "Bronco"), from the factory. On information and belief, the Bronco was built in November 2022 and is equipped with a Molded-in-Color hardtop. On or about November 30, 2022, Plaintiff took delivery of the Bronco from Apple Ford of York (now Ciocca Ford of York), in York, Pennsylvania, for a total purchase price of approximately $48,500. The Bronco was titled in West Virginia on or about December 9, 2022. A copy of Plaintiff's West Virginia registration card is attached hereto as Exhibit C.

26. Plaintiff decided to purchase the Bronco after considering Defendant's representations about the Class Vehicles, including their ruggedness, durability, off-road capability, and removable roof, as described in ¶¶ 2 and 4. Plaintiff also chose the Bronco based on Defendant's reputation for manufacturing quality vehicles.

27. Before Plaintiff purchased the Bronco, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff of the Defect. Plaintiff reasonably expected that the Bronco's hardtop would function normally and last, in accordance with Defendant's specifications and representations.

28. Plaintiff purchased the Class Vehicle for personal use. Plaintiff has always attempted to use the Bronco in the normal and expected manner.

29. On or about August 1, 2023, at approximately 16,304 miles, Plaintiff took the Bronco to Apple Ford of York to report noises, including the windows shaking while driving.

The dealer was unable to verify the concern. A copy of the service invoice is attached hereto as Exhibit D. On information and belief, increased wind noise is a warning sign of the Defect, as Ford acknowledged in its Part 573 report for Recall No. 26S32, attached hereto as Exhibit E.

30. Plaintiff has driven the Bronco regularly, and its Bumper-to-Bumper warranty has expired. Plaintiff noticed significant cracking on the Bronco's hardtop only after the warranty had expired. The cracking has progressed since then. On information and belief, the Defect was present in the hardtop when Plaintiff took delivery of the Bronco, but Plaintiff could not have discovered it at that time. Photographs of the cracking on the Bronco’s hardtop, taken on or about June 14, 2026, and on or about October 6, 2026, are shown below.



*Figure 12: Cracking on Plaintiff's hardtop roof panel, photographed on or about June 14, 2026.*



*Figure 13: Cracking on Plaintiff's hardtop roof panel, photographed on or about June 14, 2026.*



*Figure 14: Cracking on Plaintiff's hardtop roof panel, photographed on or about October 6, 2026.*



*Figure 15: Cracking on Plaintiff's hardtop roof panel, photographed on or about October 6, 2026.*

31. After noticing the cracking, Plaintiff sought help from Ford dealerships in West Virginia and Pennsylvania. When the dealerships learned that the Bronco was out of warranty, they offered no solution and declined to inspect the hardtop. Plaintiff had hoped that Ford itself would help, but Ford has not offered any inspection, repair, replacement, or other remedy.

32. On or about June 11, 2026, Plaintiff filed a safety complaint with NHTSA (NHTSA ID No. 11743541) reporting delamination and cracking in the exterior skin of the Bronco's MIC hardtop. A copy of Plaintiff's NHTSA complaint is attached hereto as Exhibit F.

33. On May 12, 2026, Ford announced a recall of certain model year 2021–2022 Broncos for the Defect (NHTSA Recall No. 26V299; Ford Recall No. 26S32). Plaintiff's Bronco is not included in that recall. NHTSA's recall lookup tool for Plaintiff's VIN does not list it. A copy of the NHTSA recall lookup results for Plaintiff's VIN is attached hereto as Exhibit G. On information and belief, the recall excludes the Bronco because it was built after the recall's cutoff dates. Ford has offered Plaintiff no inspection, repair, replacement, or warranty extension.

34. Due to Defendant's concealment, fraud and/or omissions, and refusal to repair the Defect or replace his hardtop, Plaintiff did not receive the benefit of his bargain. Had Plaintiff known that the vehicle would suffer damage following normal and expected use, Plaintiff would not have purchased the vehicle or would have paid less for it.

## CLASS ALLEGATIONS

35. This action is brought as a class action under Fed. R. Civ. P. 23.

36. The Class is defined as follows:

**Nationwide Class:** All persons who purchased a Class Vehicle in the United States.

**West Virginia Subclass:** All persons who purchased or leased a Class Vehicle in the United States and who reside in West Virginia.

**Pennsylvania Subclass:** All persons who purchased or leased a Class Vehicle in Pennsylvania.

37. The Class excludes the following: Defendant, its affiliates, its current and former employees, officers, and directors, and the judge assigned to this case.

38. The class definition may be modified based upon discovery and further investigation.

39. *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class may be ascertained through discovery of records from Defendant and third parties.

40. *Commonality*: There are questions of law or fact common to the Class, including, without limitation, whether Defendant engaged in unlawful conduct that entitles Plaintiff and Class members to relief.

41. *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same theories.

42. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the interests of the Class. Plaintiff's counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

43. *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendant and depend on the same determination of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

44. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

45. Defendant's unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

46. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (on behalf of Plaintiff and the Class)

47. All preceding paragraphs are incorporated by reference as though fully set forth herein.

48. Defendant's representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[16]

49. The Defect caused the Class Vehicles to fail to conform to Defendant's representations that formed part of the basis of the bargain.

50. The warranty covers the Defect and any damage proximately caused by the Defect.

[16] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

51. Defendant breached the warranty because it was unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

52. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

53. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendant knowingly sold a defective product without informing consumers about the Defect;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and Class members;

c. Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

54. The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, since the defective hardtop is replaced with the same defective hardtop, such that Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

55. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

56. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(on behalf of Plaintiff and the Class)**

57. All preceding paragraphs are incorporated by reference as though fully set forth herein.

58. The sale of the Class Vehicles created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[17]

59. The Defect caused the Class Vehicles to be unmerchantable because the Class Vehicles cannot perform their essential functions according to what the average purchaser would reasonably expect.

60. The warranty covers the Defect and any damage proximately caused by the Defect.

61. Defendant breached the warranty because it was unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

[17] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

62. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

63. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendant knowingly sold a defective product without informing consumers about the Defect;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and Class members;

c. Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

64. The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

65. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

66. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT III**
**FRAUD**
**(on behalf of Plaintiff and the Class)**

67. All preceding paragraphs are incorporated by reference as though fully set forth herein.

68. Defendant represented to Plaintiff and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

69. The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

70. Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

71. Defendant concealed and omitted material information concerning the Defect.

72. The Defect and the facts concealed and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

73. Defendant knew or should have known that the facts concealed and omitted were material to Plaintiff and Class members.

74. Defendant had a duty to inform Plaintiff and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect and Plaintiff and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Class Vehicles.

75. Defendant concealed and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

76. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Class Vehicles.

77. Plaintiff and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have paid less for the Class Vehicles.

78. Defendant acted in bad faith and with intent to defraud because:

a. Defendant sold the Class Vehicles to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

b. Defendant sold the Class Vehicles to Plaintiff and Class members with intent to not provide a remedy for the Defect; and

c. Defendant sought to unjustly enrich itself to the detriment of Plaintiff and Class members.

79. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT IV**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 P.S. § 201-1, *et seq*.**
**(on behalf of Plaintiff and the Pennsylvania Subclass)**

80. All preceding paragraphs are incorporated by reference as though fully set forth herein.

81. Defendant represented to Plaintiff and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

82. The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

83. Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

84. Defendant misrepresented, concealed, and omitted material information concerning the Defect.

85. The Defect and the facts misrepresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

86. Defendant misrepresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

87. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Class Vehicles.

88. Plaintiff and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

89. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing defective Class Vehicles at a premium without receiving a product that conformed to Defendant's representations.

90. Defendant knowingly and willingly accepted and enjoyed these benefits.

91. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

92. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

**COUNT V**
**VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**
**W. Va. Code § 46A-6-101, *et seq.***
**(on behalf of Plaintiff and the West Virginia Subclass)**

93. All preceding paragraphs are incorporated by reference as though fully set forth herein.

94. Defendant represented to Plaintiff and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

95. The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

96. Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

97. Defendant misrepresented, concealed, and omitted material information concerning the Defect.

98. The Defect and the facts misrepresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

99. Defendant knew or should have known that the facts misrepresented, concealed, and omitted were material to Plaintiff and Class members.

100. Defendant had a duty to inform Plaintiff and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Class Vehicles.

101. Defendant misrepresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

102. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Class Vehicles.

103. Plaintiff and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have paid substantially less.

104. Defendant acted in bad faith and with intent to defraud because:

a. Defendant sold the Class Vehicles to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

b. Defendant sold the Class Vehicles to Plaintiff and Class members with intent to not provide a remedy for the Defect; and

c. Defendant sought to unjustly enrich itself to the detriment of Plaintiff and Class members.

105. Defendant's conduct constitutes unfair or deceptive acts or practices within the meaning of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, et seq., including W. Va. Code §§ 46A-6-102(7) and 46A-6-104.

106. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of damages, including actual, statutory, and punitive damages, and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such order and further relief as this Court may deem just, equitable, or proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 30, 2026

**DELEEUW LAW LLC**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

*Attorneys for Plaintiff Colt Holbert*

OF COUNSEL:

Scott D. Hirsch*
**Scott Hirsch Law Group, PLLC**
1 Research Ct.
Suite 450
Rockville, MD 20850
Telephone: (401) 870-4049
scott@scotthirschlawgroup.com

Nicholas A. Migliaccio*
Bruno Ortega-Toledo*
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Suite 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
bortega@classlawdc.com

**pro hac vice* forthcoming